## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHARLOTTE S. TULL,

    *Plaintiff*,

*v.*                          CASE NO. 5:13-CV-14985

CAROLYN W. COLVIN        DISTRICT JUDGE JOHN CORBETT O'MEARA
Commissioner of Social Security,    MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI")

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

under Title XVI of the Social Security Act 42 U.S.C. §§ 1381-1383f. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 17, 22, 25.)

Plaintiff had previously filed an application for benefits which, was denied after a decision by administrative law judge (ALJ) Melvin Kalt dated June 23, 2005 was upheld by the Appeals Council. (Transcript, Doc. 12 at 79-89.)

Plaintiff Charlotte Tull was 40 years old on the date the application was filed. (Tr. at 532.) Plaintiff's past work includes temporary jobs of unknown duration and work as a steward for a catering company for eight years. (Tr. at 134, 152.) On April 12, 2007, Plaintiff filed the present claim for SSI, claiming she became disabled on September 1, 1999. (Tr. at 124.)

The claim was denied at the initial administrative stage. (Tr. at 90.) In denying the claim, the Commissioner considered affective disorders. (*Id.*) On December 7, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Patricia McKay, who considered the application for benefits de novo. (Tr. at 32-78.) In her decision issued on December 29, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 7-24, 20.) Plaintiff requested a review of this decision on January 12, 2010. (Tr. at 6.)

The ALJ's decision became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 20, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.)

Plaintiff filed a complaint in the United States District Court for the Eastern District of Michigan. A Report and Recommendation by R. Steven Whalen, United States Magistrate Judge, dated January 27, 2012 (Tr. at 638-59,) was adopted by United States District Judge Lawrence Zatkoff on February 22, 2012. (Tr. at 660-61.) Accordingly, the case was remanded to the

2

Commissioner, "directing the ALJ to (1) consider and address Dr. Sudindramath's May, 2009 assessment and (2) obtain vocational testimony regarding the impact of the December 29, 2009 PRT ["B" criteria] findings on job availability[,]" "specifically with regard to the finding of 'marked' limitations in social functioning." (Tr. at 522, 658.)

On October 1, 2012, another hearing was held before ALJ McKay (Tr. at 540-93,) and her decision finding that Plaintiff was not disabled was rendered on December 7, 2012. (Tr. at 519-39, 533.) The Appeals Council declined review on September 6, 2013, and extensions of time in which to file a civil action were granted twice. (Tr. at 505-06, 507, 508-10.)

On December 9, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Compl., Doc. 1.)

### B.   Standard of Review

The Social Security system contains a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

based solely on an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones*, 336 F.3d at 475. "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th

Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C.   Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353); *accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401-434, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-1385. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

6

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474; *see also Cruse*, 502 F.3d at 540. The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and

7

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date, April 12, 2007. (Tr. at 525.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: "history of irritable bowel syndrome; obesity; chronic endometriosis; degenerative disc disease of the lumbar spine with disc bulging at the L4-L5 levels with levoscoliosis; mood disorder secondary to physical condition; dysthymic disorder; and recurrent major depressive disorder." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. at 526-27.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 532.) The ALJ also found that Plaintiff was forty years old on the application date, putting her in the "younger individual age" category. (Tr. at *Id.*.) *See* 20 C.F.R. §§ 404.1563, 416.963. At step five, the ALJ found that Plaintiff could perform a limited range of sedentary jobs existing in significant numbers in the regional economy. (Tr. 532-33.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. at 533.)

### E.   Administrative Record

Plaintiff was treated in the emergency room of Sinai Grace Hospital/Eastwood Clinics on a regular basis during 2006 and 2007. (Tr. at 204-312, 354-410.) Plaintiff voluntarily came in for treatment and reported her reasons for seeking treatment as "'I'm here today because of my kids, the way I've been treating them[]'" and "trying to make sense, use logic to figure out, make sense of it[.]" (Tr. at 205.) Plaintiff was diagnosed with "depression" as a result of

abdominal/stomach pain. (Tr. at 209-10.) Plaintiff also sought treatment for her abdominal pain due to her inflammatory bowel disease. (Tr. at 229, 234, 265, 275, 283, 302.)

Plaintiff underwent consultative examinations with Dr. Hasan and Dr. Michael Sills on August 9, 2007. (Tr. at 313-16, 317-21.) Dr. Hasan diagnosed Plaintiff with Mood Disorder due to Axis III Diagnosis, and Dysthymic Disorder, assessed a GAF score of 50, and gave a "fair" prognosis. (Tr. at 315-16.) Dr. Sills concluded that Plaintiff "probably has Irritable Bowel Syndrome and the possibility of a chronic gastritis or peptic ulcer disease . . . . I am not certain of this. The symptoms and duration of the problem certainly is compatible with Irritable Bowel Disease and iron deficient anemia secondary to menorrhagia." (Tr. at 319.)

Psychiatric Review Techniques completed on August 21, 2007, and September 21, 2007, (Tr. at 322-35, 340-53), diagnosed affective disorders, i.e., mood disorder due to Axis III diagnosis. (Tr. at 325, 343.) Plaintiff was found to have only mild limitations in the areas of activities of daily living and maintaining concentration, persistence or pace and no limitations in maintaining social functioning or episodes of decompensation in one, and moderate limitations in the areas of activities of daily living and maintaining social functioning and mild limitations in concentration, persistence or pace with no episodes of decompensation in the other. (Tr. at 332, 350.)

Plaintiff was diagnosed with uterine fibroids in April 2007. (Tr. at 380, 392.) An MRI of Plaintiff's pelvis taken on June 15, 2007, showed an endometrial mass. (Tr. at 364-65.) Plaintiff underwent a hysterectomy on November 15, 2007. (Tr. at 358-60, 391.)

A Mental Residual Functional Capacity (RFC) Assessment was completed on September 20, 2007. (Tr. at 336-39.) Plaintiff was assessed with no significant limitations in understanding

9

and memory, and sustained concentration and persistence, except for moderate limitations in understanding and remembering detailed instructions and the ability to carry out detailed instructions. (Tr. at 336.)  Plaintiff was not significantly limited in social interaction except for moderate limitations in the ability to interact appropriately with the general public and the ability to maintain appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. at 337.) Plaintiff was not significantly limited in adaptation except for the ability to set realistic goals or make plans independently of others. (*Id*.) The assessment concluded that Plaintiff has the RFC for sedentary work with limited contact with the public, coworkers, and supervisors. (Tr. at 338.)

Plaintiff continued treatment at the Midwest Medical Center (Tr. at 411-30, 488-91), the Wellness Plan Medical Center (Tr. at 445-46), and Lincoln Behavioral (Tr. at 447-60, 492-93) from 2008 to 2009.

X-rays of the lumbar spine taken on March 9, 2009, showed "degenerative changes at L4-5 and L5-S1" and "levoscoliosis." (Tr. at 412.)

On May 28, 2009, Dr. Sudindramath completed a Mental RFC Assessment. (Tr. at 447-49.) Dr. Sudinramath found Plaintiff was not significantly limited or moderately limited in many areas but found her to be markedly limited in the ability to perform reading, writing, and arithmetic skills, in her ability to maintain attention and concentration for extended periods of time, her ability to sustain an ordinary routine, her ability to work in coordination with or proximity to others without being distracted, the ability to interact appropriately with the general public, the ability to get along with co-workers and supervisors, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently. (Tr. at 447-48.) Dr.

10

Sudindramath also found Plaintiff severely limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual, and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 448.) In the section that allowed for explanation of the conclusions given regarding Plaintiff's capacities, Dr. Sudindramath stated that Plaintiff has "longstanding symptoms of irritable bowel syndrome" and that her "emotional states affect the bowel condition and vice versa." (Tr. at 449.)

On June 6, 2009, Plaintiff underwent a consultative examination with Dr. H. Gummadi. (Tr. at 461-63.) Plaintiff was diagnosed with mood disorder secondary to general medical condition, was assessed a GAF score of 50, and was given a fair to guarded prognosis. (Tr. at 463.) However, Dr. Gummadi concluded that, based on his examination, Plaintiff is "able to understand, retain and follow simple instructions. She is generally restricted to performing simple, routine repetitive concrete tasks. However, due to her depression and mild to moderate psychomotor retardation, she is restricted to work that involves brief superficial interaction with coworkers, supervisors and the public." (*Id*.)

On June 26, 2009, another Psychiatric Review Technique was completed by James Tripp, Ed.D., (Tr. at 465-78), diagnosing Plaintiff with affective disorders, and disturbance of mood. (Tr. at 468.) Plaintiff was assessed as being moderately limited in activities of daily living and in maintaining social functioning and mildly limited in maintaining concentration, persistence or pace, with no episodes of decompensation. (Tr. at 475.)

A Mental RFC Assessment was completed on the same day by Dr. Tripp and it concluded that Plaintiff is not significantly limited in understanding and memory, and sustained concentration, persistence or pace except that she is moderately limited in the ability to understand

and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and to sustain an ordinary routine without special supervision. (Tr. at 479.) Plaintiff is not significantly limited in social interaction or adaptation except that she is moderately limited in the ability interact appropriately with the general public, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to respond appropriately to changes in the work setting. (Tr. at 480.) Dr. Tripp expressly disagreed with Dr. Sudindramath's conclusions that any marked or extreme limitations exist because "there is no supporting narrative and the physical problems are mentioned" and that Dr. Sudindramath's opinion was "not fully consistent with or supported by the MER" and thus, "can only be given limited weight." (Tr. at 481.) Dr. Tripp relied on a more recent consultative examination where Plaintiff was noted to be "spontaneous, logical and goal-directed" and where her mental functions and capacity were noted to be intact, and that she was able to perform simple tasks. (*Id.*) Dr. Tripp also noted that Plaintiff is "able to take care of her cat, keep appointments and socialize" such that her subjective claim of disability "is not fully supported by the MER." (*Id.*) Therefore, Dr. Tripp concluded that Plaintiff "retains the mental capacity to sustain an independent routine of simple tasks. She can tolerate and respond appropriately to routine levels of coworker and supervisor interaction. She is able to adjust to simple changes in routine." (Tr. at 481.)

An ultrasound on Plaintiff's abdomen performed in April of 2010 was normal. (Tr. at 795-96.) A colonoscopy performed in June 2011 was normal. (Tr. at 793.)

Plaintiff was treated at the Health Centers Detroit Medical Group for abdominal pain in 2011. (Tr. at 777-90.) Plaintiff was also treated by Lincoln Behavioral Services through 2012. (Tr.

at 801-33.) Plaintiff indicated that she wanted "someone to listen" and that she "'do[es]n't know what to do with [her] life.'" (Tr. at 811.)

On September 25, 2012, Dr. Sudindramath completed a mental RFC questionnaire. (Tr. at 829-33.) As to mental aptitudes to do unskilled work, Dr. Sudindramath found Plaintiff limited but satisfactory in most categories and found her seriously limited but not precluded in several other categories. (Tr. at 831.) He did not find her unable to meet competitive standards in any categories. As for mental abilities and aptitude needed to do particular types of jobs, Dr. Sudinramath found Plaintiff very good at adhering to basic standards of neatness and cleanliness and limited but satisfactory in all other categories. (Tr. at 832.) Dr. Sudinramath concluded that Plaintiff's impairments would cause her to be absent from work more than four days per month. (Tr. at 833.)

At the administrative hearing, Plaintiff testified that she is fatigued and that after a meal, her stomach swells but if she rubs her stomach "round and round" then it will return to normal in "like 15 minutes." (Tr. at 551-53.) When asked whether there is anything that precludes her from working, Plaintiff responded, "Well, trying to get the pain to go down" and that after a meal, her pain "will go away" "[a]fter [she] take[s] the medication, and after [she] do[es] the circle intestine thing[.]" (Tr. at 554.) Plaintiff also testified that her stomach also swells sometimes even when she has not eaten but that the swelling is "less" than it is when triggered by food. (Tr. at 555-56.) Plaintiff indicated that her stomach and back pain are connected and that the pain is at level nine out of ten. (Tr. at  557.) Plaintiff cares for herself and her home, which does not take much since she lives by herself, and she also watches television. (Tr. at 562.) Plaintiff stated that she does not like to be around people because they do not understand her condition and she does not know how to explain it. (Tr. at 563-64.) (Tr. at 562, 564.) Plaintiff also participates on a prayer telephone line.

(Tr. at 577.) Plaintiff cries a lot and is depressed. (Tr. at 567-68.) When asked by her lawyer what she wanted to communicate to the ALJ as to why she is disabled, Plaintiff responded, "I don't know how to live my life. I don't know how to get it going. And I just don't know what to do. I don't know what to do." (Tr. at 570.)

The ALJ asked the vocational expert (VE) to consider a person of Plaintiff's age and background who could perform sedentary work

> but with the following additional limitations. Our hypothetical Claimant needs to be
> limited to work that's simple, routine, or repetitive work. . . . I'd like to limit her to
> sedentary work, which is simple, routine, and repetitive, one or two-step tasks, but
> can tolerate occasional contact with co-workers, with the general public, or
> supervisors, which is more than superficial.

(Tr. at 583.) The VE responded that such a person could perform the 1500 jobs in Michigan, 750 in the tri-county area of lens inserter and surveillance monitor, excluding Homeland Security and gaming institutions. (Tr. at 583-84.) These jobs do not require any more than superficial contact with the public, co-workers, or supervisors. (Tr. at 584.) The surveillance monitor jobs would also allow a sit/stand option and all the jobs would allow for three to four unscheduled bathroom breaks per day. (Tr. at 585.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she had the residual functional capacity ("RFC") to perform a limited range of sedentary work. (Tr. at 532-33.) Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
> articles like docket files, ledgers, and small tools. Although a sedentary job is
> defined as one which involves sitting, a certain amount of walking and standing is

often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(b), 416.967(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this Circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982); *see also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009).

*Res judicata* binds adjudicators to "adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . ." Acquiescence Ruling ("AR") 98-4(6), 63 Fed. Reg. 29771, 29773 (June 1, 1998) (acquiescing to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)). The doctrine of *res judicata* applies to initial determinations even when an

15

ALJ never subsequently considers them. *Drummond*, 126 F.3d at 841 (citing *Draper v. Sullivan*, 899 F.2d 1127, 1130 (11th Cir. 1990)); *see also Knight v. Comm'r of Soc. Sec.*, 198 F.3d 246, 1999 WL 1111513, at *3 (6th Cir. 1999) (unpublished table decision) (applying doctrine to reconsideration after initial determination); *Domozik v. Cohen*, 413 F.2d 5, 8 (3d Cir. 1969) ("[T]he 'res judicata' principle has been applied even where no hearing had been held on the prior claim . . . ."). The determination is final and binding unless the Commissioner reconsiders it upon request or decides to revise it later. 20 C.F.R. §§ 404.905, 416.1405.

Therefore, ALJ (ALJ) Melvin Kalt's decision dated June 23, 2005 and which was upheld by the Appeals Council and was not appealed is *res judicata* as to the issue of whether Plaintiff was disabled as of the date of the decision. (Transcript, Doc. 12 at 79-89.)

### 2.    Law of the Case

The instant case was remanded to the Commissioner for a very limited purpose: "directing the ALJ to (1) consider and address Dr. Sudindramath's May, 2009 assessment and (2) obtain vocational testimony regarding the impact of the December 29, 2009 PRT ["B" criteria] findings on job availability[,]" "specifically with regard to the finding of 'marked' limitations in social functioning." (Tr. at 522, 658.)

"[W]hen a court remands a case for a limited purpose, any issue decided by the court cannot be reviewed by the SSA . . . . Furthermore, issues previously decided, either explicitly or by necessary implication, become the law of the case and are followed absent unusual or compelling reasons . . . ." Soc. Sec. Law & Prac. §53:58 (Dec. 2014).

Despite this general rule and the rationale behind it, the Sixth Circuit has not strictly adhered to the rule and permits ALJs to reconsider issues that exceed the scope of a limited remand:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, '[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.' These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion. Reconsideration of [plaintiff's] physical impairments was not inconsistent with any express or implied order of the district court.

> It is true that the district court's remand order in this case did not direct the ALJ to reconsider the evidence of [plaintiff's] physical capacity. However, the ALJ did not need a mandate from a federal court to do so. His power to do so derives from the legislative grant of authority contained in the Social Security Act.

*Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002) (citations omitted).

The dissenting opinion would have held that "the issue of residual functional capacity ('RFC') was a *decided* issue which should not have been disturbed during the administrative proceedings following remand . . . ." *Id.* (emphasis in original). The dissent's opinion appears to pay more respect to the law of the case doctrine as applied to administrative agencies on remand.

"The doctrine of the 'law of the case' holds that the Commissioner is bound on remand from a Federal Court by the scope of the court's mandate. Thus, the law of the case doctrine prevents relitigation of settled issues in a case . . . as a result, 'the ALJ is bound by factual findings made by the district court on the initial review.'" 2 Soc. Sec. Disab. Claims Prac. and Proc. §19:78 (2nd ed.) (August 2014).

Perhaps because the *Hollins* majority strays from the law of the case doctrine, it appears that some district courts have strained to avoid *Hollins*. One district court considering a remand from

the Sixth Circuit for a specific step determination has adhered to the law of the case doctrine and has distinguished *Hollins,* arguing that *Hollins* involved a district court remand, there was no decision on the merits, and the district court did not issue a remand order for evaluation at a specific step; *see, Gower v. Astrue*, No. 1:07-cv-0043, 2008 WL 2852255, at *2 (M.D. Tenn. July 23, 2008). Another district court expressly followed the law of the case doctrine and held that the ALJ exceeded the scope of remand and violated the doctrine of the law of the case where the remand was for the limited purpose of determining whether plaintiff would be capable of performing a wide range of light work activities but the ALJ redetermined the plaintiff's RFC. *Davis v. Sec'y of Health and Human Servs.*, 634 F. Supp. 174, 178 (E.D. Mich. 1986).

I suggest that the *Hollins* case was wrongly decided, but I see no principled way to distinguish it, and therefore will consider issues beyond the scope of the limited remand. I note that the parties treated the case as if all issues were open for debate and did not perceive any limitation by the law of the case doctrine.

### 3.    Substantial Evidence

Plaintiff contends that the ALJ failed to perform a proper credibility assessment and erred in evaluating treating source opinions, specifically the opinion of Dr. Sudindramath's 2012 opinion. (Doc. 17 at ID 921-23.)

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence could justify the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

18

substantial evidence supports the ALJ's decision, it must be upheld. I suggest that is the case here, and recommend upholding the ALJ's findings.

### a.   Medical Sources and Plaintiff's Credibility

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683. The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). There are important differences between the two types of sources. For example, only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2.

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

19

The ALJ must use a multi-factor balancing test to determine the probative value of medical opinions from acceptable sources, including treating opinions not given controlling weight, 20 C.F.R. § 404.1527(c), and the ALJ should almost certainly use the same analysis for "other source" opinions as well; *see Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2. The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c).

Additionally, a physician's "notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' . . . An ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (quoting *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)) "Otherwise, the hearing would be a useless exercise." *Id.*; *see also Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (noting that there was no medical opinion in "Dr. Kllefer's pain-related statement . . . [because] it merely regurgitates Francis's self-described symptoms."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data.").

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the

claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390. However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required, *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the

21

claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse*, 502 F.3d at 542 (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'" (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))); *Jones*, 336 F.3d at 475 ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely on an 'intangible

22

or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

      **b.**   **Analysis**

          *i.*    *Credibility*

In this case, the ALJ thoroughly considered all of the relevant factors. (Tr. at 527-32.) Courts reviewing credibility determinations operate in narrow confines: "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions" concerning credibility, the decision will not be reversed. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012.) Here, the ALJ cited substantial and legitimate evidence to support his conclusion. First, the ALJ found that there is no new or material evidence to show any change or worsening of her condition since the decision made by ALJ Kalt. (Tr. at 528-29.)

Plaintiff's own statements regarding her reasons for seeking treatment and disability benefits show less than disabling symptoms. Plaintiff described her reasons for seeking treatment as "'I'm here today because of my kids, the way I've been treating them[]'" and "trying to make sense, use logic to figure out, make sense of it" (Tr. at 205); that she wanted "for someone to listen" and that she "'do[es]n't know what to do with [her] life'" (Tr. at 811); and when asked by her lawyer what she wanted to communicate to the ALJ as to why she is disabled, Plaintiff responded, "I don't know how to live my life. I don't know how to get it going. And I just don't know what to do. I don't know what to do." (Tr. at 570.) When asked whether there is anything that precludes her from working, Plaintiff responded, "Well, trying to get the pain to go down" but then she indicated that after a meal, her pain "will go away" in "like 15 minutes . . . [a]fter [she] take[s] the medication, and after [she] do[es] the circle [rubbing of her] intestine thing." (Tr. at

23

551-54.) Plaintiff's description of her daily activities also lends support to the ALJ's findings. Plaintiff cares for herself and her home, she watches television, she shops for groceries and prescriptions, and she participates on a prayer telephone line. (Tr. at 562-64, 577.) Finally, Plaintiff's RFC assessment concluded that she has the RFC for sedentary work with limited contact with the public, coworkers, and supervisors. (Tr. at 338.)

There is no evidence of disabling physical issues either. X-rays of the lumbar spine taken on March 9, 2009, showed only "degenerative changes at L4-5 and L5-S1" and "levoscoliosis" (Tr. at 412), an ultrasound on Plaintiff's abdomen performed in April of 2010 was normal (Tr. at 795-96), and a colonoscopy performed in June 2011 was normal. (Tr. at 793.)

Finally, Plaintiff's physical and mental impairments were treated with, at most, prescription medication. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

I suggest that the ALJ's credibility analysis is supported by substantial evidence and should be upheld.

### ii.    Dr. Sudindramath's Opinion

An opinion from a treating source controls the ALJ's findings unless either (1) it is not "well-supported" by objective medical evidence, or (2) it is inconsistent with substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*. 710 F.3d 365, 376-77 (6th Cir. 2013). The ALJ correctly showed that the opinions here are not well-supported and substantial evidence is lined against it. The ALJ noted that Dr. Sudinramath is a psychiatrist and thus, not an expert as to Plaintiff's irritable bowel issues and that the explanation

for his 2009 opinion was that her physical condition affected her emotional state and vice-versa. (Tr. at 530.) In the section that allowed for explanation of the conclusions given regarding Plaintiff's capacities, Dr. Sudindramath stated that Plaintiff has "longstanding symptoms of irritable bowel syndrome" and that her "emotional states affect the bowel condition and vice versa." (Tr. at 449.) I suggest that the ALJ's interpretation that Dr. Sudinramath's 2009 conclusions rested on the relationship between Plaintiff's physical and mental issues is well-founded based on the doctor's own framing of his rationale.

In addition, the ALJ noted that Dr. Sudinramath did not conclude that Plaintiff is unable to work and did not identify any psychologically based symptoms to support his findings of marked and extreme limitations. (Tr. at 530.) I suggest that the ALJ is correct that no specific psychologically based symptoms are stated in support of the marked and extreme limitations.

Dr. Sudindramath's 2012 RFC opinion also supports the ALJ's findings except for its conclusion that Plaintiff would need to be absent from work for four days a month or more and that conclusion is internally inconsistent with the doctor's more specific findings. Dr. Sudinramath concluded that Plaintiff's mental aptitudes to do unskilled work were limited but satisfactory in most categories and found her seriously limited but not precluded in several other categories. (Tr. at 831.) He did not find her unable to meet competitive standards in any categories. As for mental abilities and aptitude needed to do particular types of jobs, Dr. Sudinramath found Plaintiff very good at adhering to basic standards of neatness and cleanliness and limited but satisfactory in all other categories. (Tr. at 832.) Yet, Dr. Sudinramath also concluded that Plaintiff's impairments would cause her to be absent from work more than four days per month without explanation and in contrast with his more specific findings. (Tr. at 833.) This absentee conclusion stands in direct

25

contrast to the doctor's more specific findings that do not preclude unskilled work. I therefore suggest the ALJ's decision to discount that part of his opinion is supported by substantial evidence.

The ALJ's findings are also supported by the opinions of all the other doctors who assessed Plaintiff. Dr. Gummadi concluded that, based on his examination, Plaintiff is "able to understand, retain and follow simple instructions. She is generally restricted to performing simple, routine repetitive concrete tasks. However, due to her depression and mild to moderate psychomotor retardation, she is restricted to work that involves brief superficial interaction with coworkers, supervisors and the public." (Tr. at 463.) Dr. Tripp found, at most, only mild to moderate limitations. (Tr. at 475, 479-80.) In addition, Dr. Tripp expressly disagreed with Dr. Sudindramath's 2009 conclusions that any marked or extreme limitations exist because "there is no supporting narrative and the physical problems are mentioned" and that Dr. Sudindramath's opinion was "not fully consistent with or supported by the MER" and thus, "can only be given limited weight." (Tr. at 481.) Dr. Tripp relied on a more recent consultative examination where Plaintiff was noted to be "spontaneous, logical and goal-directed" and where her mental functions and capacity were noted to be intact, and that she was able to perform simple tasks. (*Id*.) Dr. Tripp also noted that Plaintiff is "able to take care of her cat, keep appointments and socialize" such that her subjective claim of disability "is not fully supported by the MER." (*Id*.) Therefore, Dr. Tripp concluded that Plaintiff "retains the mental capacity to sustain an independent routine of simple tasks. She can tolerate and respond appropriately to routine levels of coworker and supervisor interaction. She is able to adjust to simple changes in routine." (Tr. at 481.) The ALJ's similar conclusions are thus supported by another doctor's conclusions. Substantial evidence therefore

26

exists and supports the ALJ's decision. Accordingly, I recommend affirming the ALJ's decision.

### 3.      Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

### III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not

later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date:  January 30, 2015                     /S PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge